# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:22-cr-207 |
| BRADLEY BOKOSKI, et al., | |
| Defendants. | |

**DEFENDANT BRADLEY BOKOSKI'S MEMORANDUM IN AID OF SENTENCING**

Defendant Bradley Bokoski, through undersigned counsel, respectfully submits his memorandum in aid of sentencing.

## I.   Introduction

Mr. Bokoski comes before the Court having pleaded guilty to one count of Demonstrating in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  Mr. Bokoski accepts full responsibility for the conduct that led to his appearance before this Court for sentencing.  He is ashamed of his behavior.  As a father, Mr. Bokoski has always sought to protect his son.  He failed to do that on January 6, 2021, a decision that has haunted him every day over the past two years and will for the rest of his life.  This memorandum is not intended to excuse or minimize Mr. Bokoski's conduct, but, rather, to present to the Court a full picture of his character.

The first and most critical thing to be said about Mr. Bokoski relates to the issue of remorse.  Mr. Bokoski wishes he conformed himself to the requirements of the law on January 6, 2021.  When he recognized the gravity of the situation and saw the violence begin to unfold on the steps of the Capitol, he should have led his son away from the situation.  The feeling of remorse and his acceptance of responsibility is not new.  When Mr. Bokoski was first contacted by law enforcement in June 2021, he acknowledged his actions on January 6, 2021.  In response

1

to a request from the FBI, Mr. Bokoski provided the details of his actions on that day, including a 25-point breakdown of his movements. He fully understands and appreciates the wrongfulness of his conduct and the harm he caused to others and himself. Mr. Bokoski has vowed to himself and his loved ones that he will never again find himself in this situation.

Based on these and other circumstances described below, we ask the Court to impose a sentence of time served and one year of unsupervised probation. This sentence would be sufficient, but not greater than necessary, to effectuate the purposes of sentencing prescribed in 18 U.S.C. § 3553(a).

**II. Standard**

The Court is required to consider the Federal Sentencing Guidelines in imposing sentence, but *United States v. Booker,* 543 U.S. 220 (2005) provides that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. 220). The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant. Focus on § 3553 factors "produce sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Ovid*, 2010 U.S. Dist. LEXIS 105390, at *5. 18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553 (2022).  In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2022).

### III.     Mr. Bokoski's Character and Personal History

Mr. Bokoski is 59 years old.  He is the son of Robert and Loretta Bokoski and was born and raised Joliet, Illinois.  Despite his parents divorcing when he was young, Mr. Bokoski remained close with both parents.  He watched his father work tirelessly at his blue-collar job to support the family.  This is where Mr. Bokoski learned his strong work ethic that has led to his professional successes.  His extended family, including grandparents, cousins, aunts, and uncles, lived nearby, and helped shape his youth.  School came naturally to Mr. Bokoski and he received good grades and was on the honor roll throughout middle school and high school.

There are many cliches about the type of person that does not finish college in four years.  Mr. Bokoski does not fall into any of them.  It took eight years to obtain his bachelor's degree, but it was not due to a lack of effort.  He worked full time to pay for college.  The financial

struggles of working, school, and being a newlywed almost derailed his ability to finish school. He was forced to take time off when the money that was available had to be allocated to his family responsibilities. In the end, after eight years, Mr. Bokoski was successful and obtained a B.S. in Business Administration from the University of Illinois, Chicago.

The college degree opened doors and allowed Mr. Bokoski to advance his career and start a family. He yearned to be a father and he welcomed his son, Matthew, in 1990 after his wife endured 12 hours of labor. The career advances allowed his wife to stay home with Matthew while Mr. Bokoski attended graduate school. Technology has always been something that Mr. Bokoski found interesting. His status as a "technology geek" spans back to high school. He learned computer programming when the field was in its infancy. These skills have allowed him to audit the technology facilities of one of the largest companies in the world and led to countless career advances.

Being a father came easy to Mr. Bokoski. Every professional advancement and success pales in comparison to the joy of being with his son. Mr. Bokoski instilled the ethics he learned from his father to his son. While work often took Mr. Bokoski away from home for periods of time, he tried to make up for his by spoiling his son with the accrued travel benefits. Every year Mr. Bokoski and his son took a weeklong trip. They have spanned the globe and have done things ranging from panning for gold in Alaska, admiring the Great Pyramids in Egypt, to trekking on the Great Wall in China. When talking about his son, Mr. Bokoski says "Matthew is my greatest accomplishment and has all my love."

When his father fell ill, Mr. Bokoski moved back home to care for him. Over the course of three years, he was at his father's beck and call. He cherishes the time he spent with his father before he passed away from COPD. The lure of the Great American West intrigued Mr. Bokoski

and he relocated to Nevada after the passing of his father. He fell in love with the landscapes and pace of life and ultimately settled down in Utah. When not working, he likes to explore nature and visit ghost towns and abandoned mines.

We respectfully submit that Mr. Bokoski should be judged based on his entire life, not on his inexcusable actions that led him to appear before this Court. His true character is described by his family and colleagues in the letters submitted to the Court. Mr. Bokoski is a longstanding and active member of the Knights of Columbus. The Knights of Columbus is a global Catholic men's fraternal benefit society that was formed to render financial aid to members and their families. Those that know Mr. Bokoski explain that "[h]e always put others before himself." Ex. A, Letter from Halee Palmer. Leigh Hayes, a co-worker, described Mr. Bokoski as a "overall good person" that has "shown kindness and compassion for [Ms. Hayes] and others through difficult times." Ex. B, Letter from Leigh Hayes. Mr. Bokoski is an active member of Saint Peter Catholic Church. A fellow parishioner, Rogelio Castaneda Jr., describes Mr. Bokoski as a "trusted parishioner and friend [who] can be counted on to be of help to others in [the] church community, as well as those in [the] local community." Ex. C, Letter from Rogelio Castaneda Jr. Additional letters attesting to Mr. Bokoski's character are attached hereto as Exhibit D.

Mr. Bokoski has had time to reflect over the past two years of his inexcusable behavior on January 6, 2021. He has brought shame upon himself and his family and, most regrettably, is responsible for his son having to carry a criminal conviction for the rest of his life. His actions have already borne consequences. Pictures of Mr. Bokoski and his son have been plastered in print and online media. An MSNBC segment referred to them as "Father and Son Insurrectionists." Anonymous individuals have sent Mr. Bokoski threatening letters, phone calls, and text messages. The outcome of the sentencing will determine if Mr. Bokoski can keep his

job. While his employer is aware of his arrest, he will not be permitted to use vacation days or unpaid leave for any period of incarceration. He has worked for his company for 10 years. If he loses his job, Mr. Bokoski will almost certainly lose his home.

### IV. Nature and Circumstances of the Offense

There is a lack of aggravating facts related to the nature and circumstances of Mr. Bokoski's actions on January 6, 2021. Mr. Bokoski invited his son to travel to Washington, D.C. to attend President Trump's final rally. Matthew lives in Chicago and Mr. Bokoski purchased the airlines tickets. Once they arrived in the Washington, D.C. area, Mr. Bokoski and his son spent time with family friends before attending the rally on January 6, 2021. After attending the rally, Mr. Bokoski and his son discussed whether to go to the Capitol as President Trump had urged or leave. They decided to walk towards the Capitol. They watched as the situation at the Capitol devolved and heard that people were being let into the building. They entered the building and walked around for a few minutes and then left. They did not engage in any violence or property destruction and were inside the Capitol for less than five minutes.

Of all the individuals that have been arrested and prosecuted, we submit that Mr. Bokoski's non-violent actions set him apart from those that engaged in more egregious criminal conduct in and around the Capitol. He had numerous interactions with law enforcement inside and outside of the Capitol. None of them were violent. Upon entering the Capitol, he was greeted by a police officer that said "Welcome to the People's House. Feel free to walk around and take photos." In response to this and seeing a line of police officers inside the hallway, Mr. Bokoski expressed gratitude, saying "Thank you for your service and protecting the Capitol." He decided to exit the building less than five minutes after entering.

### V. Need to Avoid Unwarranted Disparities

The horrendous conduct carried out by the thousands of people that stormed the Capitol on January 6, 2021 and engaged in combat with law enforcement will serve as a permeant stain on the history of our Nation. Mr. Bokoski regrets having any part in the events that played out on that day. We submit that his conduct stands in stark contrast with the conduct that has led to terms of incarceration beyond time served being imposed.

A review of cases involving similar conduct supports our request for a non-custodial sentence for Mr. Bokoski. The attack on the U.S. Capitol on January 6, 2021 has led to more than 950 arrests. Of those arrested, 484 have pleaded guilty. 364 people have pleaded guilty to misdemeanors. Mr. Bokoski was in the U.S. Capitol for less than five minutes and did not engage in any violence or destruction of property. His actions are similar to other defendants that have pleaded guilty to misdemeanor dispositions and received non-custodial sentences.

Part (a)(6) of 18 U.S.C. § 3553 provides that "The court, in determining the sentence to be imposed, shall consider [ . . . ] the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The primary purpose of § 3553(a)(6) "was to reduce unwarranted sentence disparities nationwide." *United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007). Examination of these other cases demonstrates that a non-custodial sentence would avoid unwarranted disparities. Conversely, a custodial sentence would create an unwarranted disparity.

*United States v. Eduardo Nicolas Alvear Gonzalez*, **1:21-cr-115**

Eduardo Nicolas Alvear Gonzalez was arrested and charged related to his actions on January 6, 2021. Mr. Gonzalez pleaded guilty to one count of Demonstrating in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). As part of his plea agreement, he admitted to being in the Capitol for more than 30 minutes. While inside, he smoked marijuana in the Rotunda and passed out marijuana to others inside the building. He left only after a law enforcement officer grabbed him and directed him towards the exit. The Court sentenced Mr. Gonzalez to two years of probation, 200 hours of community service, a $1000 fine, and $500 in restitution.

*United States v. Darrell Alan Youngers*, **1:21-cr-640**

Darrell Alan Youngers was arrested and charged related to his actions on January 6, 2021. Mr. Youngers pleaded guilty to one count of Demonstrating in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). As part of his plea agreement, he admitted to entering the Capitol and making statements encouraging the actions of others. Mr. Younger entering the building with another individual that forced open the Rotunda Doors allowing more rioters to enter the building. The Court sentenced Mr. Youngers to 36 months of probation, a $1000 fine, and $500 in restitution.

*United States v. Jeffrey Witcher*, **1:21-cr-235**

Jeffrey Witcher was arrested and charged related to his actions on January 6, 2021. Mr. Witcher pleaded guilty to one count of Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1). As part of his plea agreement, he admitted to entering the Capitol and making statements encouraging the actions of others. He also taunted and threatened law enforcement officers inside the Capitol, chanting "don't be a traitor!" and "do

or die!" The Court sentenced Mr. Witcher to 12 months of probation, 60 hours of community service, and $500 in restitution.

### *United States v. David Wiersma*, 1:21-cr-592

David Wiersma was arrested and charged related to his actions on January 6, 2021. Mr. Wiersma pleaded guilty to one count of Demonstrating in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). As part of his plea agreement, he admitted to entering the Capitol and entering two offices on the Senate portion of the building and the Crypt. The Court sentenced Mr. Wiersma to 18 months of probation, a $1,500.00. fine, and $500 in restitution, and 100 hours of community service.

## VI.   Conclusion

Mr. Bokoski understands that the situation he finds himself in is the direct result of his actions and looking in the mirror will reveal the person responsible. It is our submission that Mr. Bokoski is not and should not be defined by his actions on January 6, 2021. He immediately acknowledged his wrongdoing and willingness to accept punishment for his actions. We submit that the two days Mr. Bokoski spent in jail, in addition to the collateral consequences outlined above and self-imposed punishment that he will endure for the rest of his life, are sufficient punishment for his actions.

Based on the foregoing, we respectfully submit that a sentence of time served and one-year of unsupervised probation would be a just and appropriate sentence.

Respectfully submitted,

/s/ Marc Eisenstein
_____

Marc J. Eisenstein
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, NW
Second Floor
Washington, DC  20036
Tel:  703-963-7164
Fax:  866-561-9712
Email:  marc@coburngreenbaum.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 10, 2023, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served through that system upon all counsel of record.

_____/s/_____
Marc Eisenstein